DECISION AND JUDGMENT ENTRY
This is an appeal from a February 3, 1999 judgment of the Municipal Court of Norwalk, Ohio following a jury trial, that appellant, Roger Scaggs, is guilty of driving under the influence of alcohol, a violation of R.C. 4511.19(A) (1), and from the sentence imposed for his crime. Appellant has presented one assignment of error for consideration on appeal that is:
 "I. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
The Supreme Court of Ohio has explained the standard of review an appellate court must use for a manifest weight argument:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks supra, at 1594.
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. * * *" State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
Further, the Supreme Court of Ohio has said the jury at trial, not an appellate court, has the function of deciding which witnesses are credible. Keeping these standards in mind, we have carefully reviewed the record in this case.
The record shows that only one witness testified at trial: the state trooper who placed appellant under arrest for driving under the influence of alcohol. His testimony regarding the events that led to the arrest of appellant was as follows.
On February 23, 1996 at 2:17 a.m., the trooper was driving eastbound on U.S. 20 in Wakeman Township, Huron County, Ohio, when he saw a vehicle approaching from the westbound direction. Though conditions were moderately foggy, the trooper was able to see for several hundred feet ahead of his cruiser. He noticed that the approaching vehicle was being driven approximately two feet left of center for about twenty-five to thirty feet. When the vehicle passed him, the trooper also saw that there was no front license plate on the vehicle, and the front windshield was cracked.
The trooper turned his cruiser around and sped up to catch the vehicle. He turned on his flashing lights, but did not turn on his siren. The driver of the vehicle did not stop. Instead, he drove on until he reached a trailer park, and drove down two streets until he parked in a driveway. The trooper followed him and parked behind him.
The trooper testified that appellant was the driver of the vehicle he followed. He said that when he was several feet away from appellant, he smelled a strong odor of an alcoholic beverage. He said when he got closer, he could tell the odor was coming from appellant's breath. He could also see that appellant's eyes were bloodshot and glassy. When he spoke with appellant, appellant's speech was slurred.
The trooper asked appellant to go to the trooper's cruiser, and appellant complied. The trooper was asking for appellant's address and social security number, but appellant "just sat there in silence." The trooper then told appellant he was going to arrest appellant for driving under the influence. The trooper said: "After I placed him under arrest, he then decided that he was going to perform a portable breath test as well as the horizontal gaze nystagmus."
The trooper said he did give appellant the horizontal gaze nystagmus test. He held his flashlight above appellant's head while appellant sat in the open doorway of the back seat of the cruiser, and the trooper moved a pen in front of appellant for appellant to follow with his eyes. The trooper said there are "six possible clues" to look for in the test to see if someone is under the influence of alcohol and that he found all six clues when appellant did the test.
A Huron County Sheriff's Deputy who arrived at the scene to help the trooper then took appellant to a police station. The trooper testified that he collected a urine sample from appellant and sent it to a lab for testing. However, because the trial court sustained objections raised by appellant, no testimony was presented regarding the results of the testing of the urine sample.
On cross-examination, the trooper conceded that he did not administer the horizontal nystagamus gaze test under optimal conditions, since the best circumstances would be to give the test in a well lighted room. He also conceded that he generally gives two other field sobriety tests in addition to the horizontal nystagamus test.
On redirect examination he explained he did ask appellant to do the other field sobriety tests. He said at first appellant did not respond to his request, and later appellant "became argumentative" and refused to do the other field sobriety tests.
Appellant argues that appellant's conviction for driving under the influence based upon the evidence just outlined above was against the manifest weight of the evidence. Appellant argues that the jury was improperly influenced by information it was told in the state's opening statement and in the trooper's testimony.
Specifically, appellant complains that the jury was told in the state's opening statement that appellant was charged with driving with a suspended license and that he failed his urine test. He says the charge for driving with a suspended license was dismissed by the trial court pursuant to Crim.R. 29, and the results of the urine test were excluded from trial because the state failed to call witnesses who could verify the procedures used to test the urine and the results of the test. He says the jury considered this evidence anyway, and points to a question the jury sent to the trial court while it was deliberating. He says that without considering the omitted urine test results, the jury did not have enough evidence to find beyond a reasonable doubt that appellant was driving under the influence of alcohol.
The record shows that the state did make some reference in its opening statement to appellant being charged with driving with a suspended license. The only statement regarding the urine sample in opening statement is recorded as follows: "They then took him to the (inaudible) where he was given a urine test to determine the extent of the alcohol he had consumed and was (inaudible)." As we have already noted, the record does show that the trooper testified that he took a urine sample from appellant and sent it to a lab for testing, but the trial court did not allow him to testify about the results of the testing.
The record also shows that the jury asked a question about the urine test results during deliberation. The trial court took the following action regarding the jury question:
 "THE COURT: Be seated. Ladies and gentlemen, you have submitted in writing a question to the Court. The question that was submitted is it possible to find out the urine results. There are no results of a urine test in evidence and you must consider — you must deliberate based solely on the evidence that is before you. I don't mean to negate you or withhold things from you, however you are required, based on your oath, to make a determination based on evidence that was presented to you. So I'm going to ask that you return to the jury deliberation room and deliberate and consider the testimony that was presented to you. If you have any questions regarding the instructions that I've given you, again, feel free to put that in writing and we will answer those, but unfortunately the only answer I can give to that question is there are no results of the urine test in evidence and you must consider only the evidence that was presented. Thank you."
After carefully considering the record, we find appellant's arguments unpersuasive. First, the record does not definitively show that the jury was told in opening statements that appellant "failed" a urine test. Portions of the only remark made regarding the urine test were inaudible and were not fully transcribed. Second, even if we construed the existing transcript as showing that the jury was told in opening statements that appellant failed a urine test, and that appellant was charged with driving with a suspended license, we find no proof that appellant was prejudiced by those remarks.
When the case was presented to the jury at the close of trial for deliberation, the only charge presented was driving under the influence of alcohol. Therefore, the jury could clearly tell it was not being asked to consider whether appellant was guilty of driving with a suspended license. In addition, the trial court's instructions clearly explained that the state had the burden to prove every essential element of the crime beyond a reasonable doubt and that the jury could only consider evidence from the trial. The jury instructions included the following statement:
 "The evidence does not include the complaints, opening statements, or closing arguments of counsel. The opening statements and closing arguments of counsel are designed to assist you. They are not evidence. Statements or answers that were stricken by the Court for which you were instructed to disregard are not evidence, and must be treated as though you never heard them. You must not speculate as to why the Court sustained the objection to any question or what the answer to such question might have been. You must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered."
The answer given by the trial court when the jury asked the question during deliberations reinforced the initial instruction that was given to the jury to consider only evidence that was admitted at trial.
After viewing the record as a whole, we find no reason to believe appellant's assertion that the jury considered the remarks cited by appellant from the state's opening statement when it found appellant guilty of driving under the influence of alcohol. The trial court clearly explained to the jury that it could not consider remarks made by either counsel in opening and closing statements as evidence. In addition, when the jury asked its question, the trial court clearly explained that the jury could not consider any urine test results because they were not admitted as evidence.
Furthermore, we reject appellant's assertion that if the jury only considered the evidence that was admitted at trial, appellant's conviction was against the manifest weight of the evidence. The jury was the sole judge of witness credibility, and if it believed the testimony of the trooper the evidence it had to consider was that appellant: 1) was driving his vehicle two feet over the center line for twenty-five to thirty feet; 2) did not stop his vehicle when the state trooper followed him and turned on the cruiser's flashing lights; 3) had a strong odor of an alcoholic beverage on his breath; 4) had bloodshot, glassy eyes; 5) had slurred speech; 6) showed all six possible clues for being under the influence in a horizontal nystagmus gaze test; and 7) refused to take two remaining field tests. The jury clearly found the officer credible, and we will not reverse that determination on appeal. See State v. Kehn (1977), 50 Ohio St.2d 11, 14.
When viewed together, the evidence from trial was sufficient to allow reasonable minds to conclude that the state has proved beyond a reasonable doubt that appellant was driving under the influence of alcohol. See State v. Shultz (June 24, 1996), Athens App. No. 95CA1694, unreported ("A suspect can be found guilty of an (A) (1) offense on nothing more than the observations and testimony of the arresting officer (presupposing, of course, that they are found credible by the trier of fact).") We cannot conclude that the jury "lost its way" in this case. Appellant's sole assignment of error is not well-taken.
The judgment of the Municipal Court of Norwalk, Ohio is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 PETER M. HANDWORK, J.
_______________________________ JUDGE
 RICHARD W. KNEPPER, P.J.
_______________________________ JUDGE
 MARK L. PIETRYKOWSKI, J.
_______________________________ JUDGE
CONCUR.